**IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| CITY OF CHICAGO, a municipal corporation, | ) ) ) | |
| Plaintiff, | ) ) | No. 14 C 4361 |
| v. | ) ) | Judge Jorge L. Alonso |
| PURDUE PHARMA L.P., PURDUE PHARMA, INC., THE PURDUE FREDERICK COMPANY, INC., TEVA PHARMACEUTICAL INDUSTRIES, LTD., CEPHALON, INC., JOHNSON & & JOHNSON, JANSSEN PHARMACEUTICALS, INC., ENDO HEALTH SOLUTIONS, INC., and ACTAVIS PLC, | ) ) ) ) ) ) ) ) ) ) ) | |
| Defendants. | ) | |

**MEMORANDUM OPINION AND ORDER**

The City sues defendants for their alleged violations of the Chicago Municipal Code and state law in connection with their marketing of opioids.  Seven of the defendants, Purdue Pharma, Purdue Pharma Inc., The Purdue Frederick Company, Inc., (collectively, "Purdue"), Cephalon, Inc., Johnson & Johnson, Janssen Pharmaceuticals, Inc., and Endo Health Solutions, Inc. ("defendants"), have filed a "Joint Motion for Relief from Improper Delegation of Governmental Police Power to a Financially-Interested Private Party."  For the reasons set forth below, the Court denies the motion.

**Background**

On April 8, 2013, the City retained the law firm of Cohen Milstein Sellers & Toll, PLLC, ("Cohen") "to represent [the City] in an investigation and litigation of potential claims regarding fraudulent marketing of opioid drugs ("Opioid Matter")."  (Stein Decl. Supp. Defs.' Mot., Ex. 5,

4/8/13 Retainer Agreement, Preamble.)  The agreement provides that Cohen "is responsible for providing all legal services required in investigating and litigating this matter" and "will be paid on a contingent fee basis, only upon a recovery in the Opioid Matter."  (*Id.* ¶¶ 1, 8.)  It also states that: (1) "The City will maintain control of the investigation and litigation and will make all key decisions, including whether and how to proceed with litigation, which claims to advance, which defendants to sue, what relief to seek, and whether and on what terms to settle the litigation."; (2) "The City must approve any settlements and must be apprised of any settlement offers made by defendants."; and (3) after the investigation is completed, "the City will determine whether to move forward to litigation." (*Id.* ¶¶ 11-12, 14.)

Pursuant to the retention agreement and the City's False Claims Ordinance, Cohen served investigative subpoenas on defendants.  Defendants Purdue, Endo, Johnson & Johnson, and Janssen objected, arguing that the Ordinance barred the City from delegating to Cohen the power to issue investigative subpoenas.[1]  (*See* Stein Decl. Supp. Defs.' Mot., Ex. 2, Letter from Stein to Dolesh (May 10, 2013); *id.*, Ex. 4, Letter from Stein to Dolesh (July 18, 2013); Davis Decl. Supp. Mot., Ex. 2, Letter from Davis to Dolesh (May 16, 2013); Fitzgerald Decl. Supp. Mot., Ex. 2, Letter from Fitzgerald to Patton (Apr. 29, 2013).)  The City withdrew the subpoena to Purdue and reissued subpoenas through Assistant Corporation Counsel Michael Dolesh to Endo, Johnson & Johnson and Janssen.  (*See* Fitzgerald Decl., Ex. 4, Letter from Dolesh to Fitzgerald (Sept. 24, 2013); Stein Decl. Supp. Defs.' Mot., Ex. 3, Letter from Dolesh to Stein (June 27, 2013) & Subpoena; Davis Decl. Supp.

---

[1]Though defendant Cephalon joins in this motion, it contains no information about any subpoena issued to Cephalon or Cephalon's response to it.

Mot., Ex. 3, Letter from Dolesh to Davis (May 31, 2013) & Subpoena.)  Endo, Johnson & Johnson

and Janssen apparently complied in whole or part with the reissued subpoenas.[2]


### Discussion

Defendants ask the Court to invalidate the City's contract with Cohen and issue a permanent

injunction  barring  the  City  from  using  Cohen  in  this  suit  "or  any  similar  action  against

[defendants]."  (*See* Defs.' Mem. Law Supp. Mot. at 13.)  Defendants contend that they are entitled

to this relief because:  (1) the City unlawfully delegated its investigative subpoena power under the

False Claims Ordinance to Cohen; (2) Cohen's involvement in this case violates the City's Ethics

Ordinance; and (3) Cohen's pecuniary interest in the outcome of the suit creates a conflict of interest

that violates defendants' right to due process.

> With respect to subpoena power, the Chicago False Claims Ordinance states:
>
> Whenever the corporation counsel has reason to believe that any person may be in
> possession, custody, or control of any documentary material or information relevant
> to a[] [false claims] investigation, *the corporation counsel* may, before commencing
> a civil proceeding under this chapter, issue in writing and cause to be served upon
> such person, a subpoena requiring such person:
> (A) to produce such documentary material for inspection and copying,
> (B) to answer, in writing, written interrogatories with respect to such documentary
> material or information,
> (C) to give oral testimony concerning such documentary material or information, or
> (D) to furnish any combination of such material, answers, or testimony. . . .

M.C.C. § 1-22-50(a)(1) (emphasis added).  Defendants argue that the corporation counsel cannot

delegate to outside counsel the subpoena power vested in him by the Ordinance.

---

[2]Teva complied with the initial subpoena over objection.  (*See* Diamantatos Decl. Supp.
Mot. Ex. 2, Letter from Sitarchuk to Singer (Nov. 4, 2013).)

Even if that is true, an issue the Court does not decide, it is immaterial here.  After defendants objected to Cohen's issuance of the subpoenas, the City withdrew them and/or issued new subpoenas through Assistant Corporation Counsel Dolesh.  (*See* Fitzgerald Decl. Supp. Defs.' Mot. ¶ 6; Stein Decl. Supp. Defs.' Mot. ¶¶ 3-4; Davis Decl. Supp. Defs.' Mot. ¶¶ 3-4.)  Because the moving defendants were not required to comply with the Cohen-issued subpoenas, they could not have been harmed by them, even if they were erroneously issued.

Defendants argue, however, that the subpoenas issued by Dolesh were equally defective because the False Claims Ordinance vests nondelegable subpoena power in a single individual – the corporation counsel.  In support of their argument, defendants cite *Cudahy Packing Co. of Louisiana v. Holland*, 315 U.S. 357 (1942), in which the Supreme Court held that section 4 of the Fair Labor Standards Act ("FLSA") did not implicitly authorize the Administrator of the Department of Labor to delegate subpoena power to his regional assistants.  *Id.* at 366.  The Court reached this conclusion because the structure and content of FLSA, and "[t]he entire history of [federal] legislation controlling the use of subpoenas by administrative officers," suggested that when Congress authorized delegation it did so explicitly, not implicitly as the Administrator had argued.  *Id.* at 364-69.  Defendants, however, identify no part of the False Claims Ordinance itself or the Chicago Municipal Code ("Code") as whole that suggests delegation is forbidden.  In fact, the Code suggests that delegation is the norm, as it states that "the corporation counsel shall . . . , [s]uperintend and, with his assistants and clerks, conduct all the law business of the city."  M.C.C. § 2-60-020(a). Issuing subpoenas for false claims investigations, or any other purpose, is part of the "the law business of the city."  Thus, *Cudahy Packing* does not further defendants' case.

4

Nor does *Appeal Board of Department of Environmental Control of City of Chicago v. U.S. Steel Corp.*, 272 N.E.2d 46 (Ill. 1971).  The Court in that case held that state law did not permit the City to vest its environmental appeal board with subpoena power.  *See id.* at 48-49.  Defendants do not contend that the City exceeded its state mandate by creating subpoena power to investigate false claims.  Accordingly, *Appeal Board* is also inapposite.

Moreover, even if the subpoenas were improperly issued, defendants offer no authority for the notion that voiding the City's contract with Cohen would be the appropriate remedy for that harm rather than that set forth in the Code:

> (A) Any person who has received a subpoena issued under subsection (a) may file, in the circuit court of any county within which such person resides, is found, or transacts business, and serve upon the corporation counsel a petition for an order of the court to modify or set aside such subpoena. . . .
>
> (B) The petition shall specify each ground upon which the petitioner relies in seeking relief under subparagraph (A), and may be based upon any failure of the subpoena to comply with the provisions of this section or upon any constitutional or other legal right or privilege of such person. . . .

M.C.C. § 1-22-50(j)(2).  Defendants' apparent failure to use this process to contest the subpoenas is not a basis for invalidating the City's contract with Cohen.

Defendants also argue that the contract should be invalidated because it violates the City's Ethics Ordinance, which provides:

> No official or employee shall make, participate in making or in any way attempt to use his position to influence any city governmental decision or action in which he knows or has reason to know that he has any financial interest distinguishable from its effect on the public generally, or from which he has derived any income or compensation during the preceding twelve months or from which he reasonably expects to derive any income or compensation in the following twelve months.

M.C.C. § 2-156-030(a).  The Ordinance defines "employee" as "an individual employed by the City of Chicago, whether part-time or full-time, but excludes elected officials and city contractors."

5

M.C.C. § 2-156-010(j).  It defines "city contractor" as "any person . . . who is paid from the city

treasury or pursuant to city ordinance, for services to any city agency, regardless of the nature of the

relationship of such individual to the city for purposes other than this chapter.  A 'city contractor'

shall not include officials and employees."  M.C.C. § 2-156-010(e).  Based on these definitions, the

City's Ethics Board concluded that Cohen was a city contractor, not an employee, and thus not

subject to § 2-156-030 of the Ethics Ordinance:

> . . . .  The Board has examined the following factors, in addressing whether an
> individual is a City employee or contractor:  i) the individual holds a classified City
> position; ii) the individual is paid from the City payroll; iii) the individual receives
> employee benefits, such as health insurance and a right to inclusion in the City's
> pension fund; and iv) there is federal income tax withholding. . . .
>
> In the matter before us, attorneys at [Cohen] who work on the Purdue Pharma
> litigation on behalf of the City:  i) do not hold classified City positions; ii) are not
> paid from the City payroll, rather they are paid from the net recovery in the litigation,
> if any . . . ; iii) do not receive employee health benefits such as health insurance and
> a right to inclusion in the City's pension fund; and iv) any payment will not include
> federal income tax withholding.  In short, not one of the relevant factors that
> establish that an individual is an "employee" for purposes of the Ordinance is present
> here.  Rather, the nature of the work being done by [Cohen] and the manner in which
> the firm is to be compensated establish that its attorneys are independent contractors
> working under a personal services contract.

(*See* Mem. Law Opp'n Mot., Ex. A, Letter from Dolesh to Defs.' Counsel, Ex. 1, Chicago Bd.

Ethics, Adv. Opinion at 3-4, Jurisdiction of Ethics Ordinance, No. 14032.A (Aug, 20, 2014)

(footnotes omitted).)  The Court agrees with the Ethics Board's reasoning.

Further, the Court rejects defendants' assertion that Cohen is a City official for purposes of

the Ethics Ordinance.  The Ordinance defines "official" as "any person holding any elected office

of the city or any appointed, non-employee member of any city agency."  M.C.C. § 2-156-010(q).

Cohen was neither elected nor appointed to the City's Law Department, and thus by the plain

language of the Ordinance is not a City official.[3]  In short, the City's retention agreement with

Cohen does not violate the Ethics Ordinance.

Finally, defendants argue that Cohen's pecuniary interest in the outcome of this litigation

disqualifies the firm from working on this case.  A number of courts have held that government

entities may hire outside counsel on a contingent-fee basis if there are certain safeguards in place.

The Court in *County of Santa Clara v. Superior Court*, 235 P.3d 21 (Cal. 2010), *cert. denied sub*

*nom. Atl. Richfield Co. v. Santa Clara Cnty.*, 131 S. Ct. 920 (2011), for example, held that:

> [C]ontingent-fee agreements between public entities and private counsel must
> provide: (1) that the public-entity attorneys will retain complete control over the
> course and conduct of the case; (2) that government attorneys retain a veto power
> over any decisions made by outside counsel; and (3) that a government attorney with
> supervisory authority must be personally involved in overseeing the litigation.

*Id.* at 40. Similarly, the Rhode Island Supreme Court held that "the Attorney General [was] not

precluded from engaging private counsel pursuant to a contingent fee agreement" if the Attorney

General's Office:  (1) "retain[ed] complete control over the course and conduct of the case";

(2)"retain[ed] a veto power over any decisions made by outside counsel"; and (3) "involved [a senior

staff member] in all stages of the litigation."  *State v. Lead Indus. Ass'n, Inc.*, 951 A.2d 428, 477

(R.I. 2008); *see generally* David B. Wilkins, *Rethinking the Public-Private Distinction in Legal*

*Ethics: The Case of "Substitute" Attorneys General*, 2010 Mich. St. L. Rev. 423.

---

[3]The result is the same under Illinois common law. *See Midwest Television, Inc. v. Champaign-Urbana Comm'ns, Inc.*, 347 N.E.2d 34, 38 (Ill. App. Ct. 1975) ("The characteristics of a public office include:  (1) creation by statute or constitution; (2) exercise of some portion of the sovereign power; (3) a continuing position not occasional or contractual; (4) fixed tenure; (5) an oath is required; (6) liability for misfeasance of nonfeasance; and (7) the official has an independence beyond that of employees.").

These principles were applied in *Merck Sharp & Dohme Corp v. Conway*, 947 F. Supp. 2d 733 (E.D. Ky. 2013).  In that case, the Kentucky Attorney General ("AG") filed suit against a drug manufacturer alleging that it had committed unfair trade practices in connection with the marketing of one of its drugs.  *Id.* at 735. When the AG hired outside counsel pursuant to a contingent-fee contract, the drug company filed a second suit, seeking a declaration that outside counsel's pecuniary interest in the outcome of the trade practices suit deprived the company of due process. *Id.* at 736.

The court held that the contract, which contained the following provisions, adequately protected the drug company's rights:

> The Attorney General shall have final authority over all aspects of this litigation, including the course and conduct of the case, as well as total control over all discretionary decisions. The litigation may be commenced, conducted, settled, approved, and ended only with the express approval and signature of the Attorney General. The Attorney General at his sole discretion has the right to appoint a designated assistant ("designated assistant") to oversee the litigation, which appointment the Attorney General may modify at will.

> Contractor shall provide legal services to the Attorney General subject to the approval of the Attorney General for the purposes of seeking injunctive relief, monetary relief, and other relief against all entities in this litigation. . . .

> Contractor shall coordinate the provision of the legal services with the Attorney General or his designated assistant, other personnel of the Office of the Attorney General, and such others as the Attorney General may appoint as Contractor. All substantive pleadings, motions, briefs, and other material which may be filed with the court shall first be approved by the Attorney General and provided to his office in draft form in a reasonable and timely manner for review. Regular status meetings may be held as requested by the Attorney General.

> Contractor shall communicate with state entities through the Office of the Attorney General unless otherwise authorized by the Attorney General designee and Merck can contact the Office of the Attorney General or his designee at any time . . . .

> The Attorney General must approve in advance all aspects of this litigation and shall be included in any settlement discussions. Contractor agrees that any settlement in

8

this case must receive the Attorney General's express prior approval in writing. Contractor shall confer with the Attorney General as early as practicable in any settlement negotiation process.

*Id.* at 737, 741-44.

The City's contract with Cohen contains the safeguards identified in *County of Santa Clara*,

*Lead Indus.*, and *Merck*:

The City will maintain control of the investigation and litigation and shall make all key decisions, including whether and how to proceed with litigation, which claims to advance, which defendants to sue, what relief to seek, and whether and on what terms to settle the litigation. [Cohen] will be responsible for carrying out the investigation and litigation and for making day-to-day decisions regarding court filings, subpoenae and investigative demands, court appearances, discovery matters, trial, and any appeal. [Cohen] will provide regular reports to the City on the status of any significant developments in the matter.

The City must approve any settlements and must be apprised of any settlement offers made by defendants.

The City will designate a point of contact who will supervise the investigation and litigation and who will be available directly to other parties in this matter as needed.

When the initial investigation has been completed, the City will determine whether to move forward to litigation. . . .

(*See* Stein Decl. Supp. Mot., Ex. 5, Retainer Agreement at 2.)  Because the City retains control over

the investigation and litigation of this case, its retention of Cohen does not violate defendants' due

process rights.

9

## Conclusion

For the reasons set forth above, the Court denies defendants' joint motion for relief from improper delegation of police power [148].

**SO ORDERED.**                                    **ENTERED:   March 2, 2015**

_____

**HON. JORGE L. ALONSO**
**United States District Judge**